CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

MAR 05 2025

LAURA A. AUSTIN, CLERK
BY: R. Bordurm
   DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE ARREST OF MCKINLEY LEE SHAFFER | Case No. 1:25 mj17 |

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Peter Gonzalves, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint and warrant for the arrest of McKinley Lee SHAFFER, who is currently incarcerated on state charges at the Southwest Virginia Regional Jail Authority facility in Abingdon, Virginia, within the Western District of Virginia. As outlined below, there is probable cause to show SHAFFER violated Title 18, United States Code, Section 1512(a)(2)(A), Tampering with a Witness/Victim by Physical Force or Threat.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since August 2016. I am currently assigned to the Bristol, Virginia Field Office. Prior to becoming an ATF Special Agent, I was a Special Agent with the U.S. Department of State, Diplomatic Security Service for approximately six years. I have taken part in numerous federal, state,

and local investigations concerning document and identity fraud, financial fraud, cybercrimes, firearms and narcotics, and violent crimes violations.

3. During my tenure in law enforcement, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds and the organization of drug conspiracies, and methods and techniques commonly employed during the commission of violent crimes, including robbery. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing confidential sources and cooperating witnesses; conducting physical surveillance; controlled buys; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen-register data; requesting, collecting and analyzing billing records; and conducting court-authorized electronic surveillance. Further, I have participated in the preparation, presentation, and execution of numerous search and arrest warrants which have resulted in the recovery of weapons, narcotics, money, and documentary evidence indicative of firearm and narcotic trafficking organizations. Additionally, I have assisted in investigations and arrests leading to convictions for violations of federal and state firearms and narcotics laws to include violent crime.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and

witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of the above-referenced statute have been committed by SHAFFER.

## LEGAL BACKGROUND

6. I understand that:

   a. Under 18 U.S.C. § 1512(a)(2)(A), whoever "uses physical force or the threat of physical force against any person, or attempts to do so, with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding" has committed a crime.

   b. Section 1515 of Title 18 defines the term "official proceeding" to include "a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury."

   c. Under 18 U.S.C. § 1512(f), "an official proceeding need not be pending or about to be instituted at the time of the offense."

    d. Under 18 U.S.C. § 1512(g), in a prosecution for an offense under § 1512, "no state of mind need be proved with respect to the circumstance . . . that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency."

## PROBABLE CAUSE

7. On April 21, 2024, officers with the Bristol, Virginia Police Department (BVPD) conducted a traffic stop of a vehicle driven by Lakin Garrett. Tracy Brandon Gray was the only passenger in the vehicle. BVPD found a Glock pistol under Gray's seat. Further investigation revealed that the pistol had been converted to fully automatic fire via a "machinegun conversion device" (MCD), colloquially known as a "switch." Evidence indicates that Gray manufactured the MCD using a 3D printer. Although both Gray and Garrett initially denied ownership of the pistol, Garrett later explained that the pistol belonged to Gray, that Gray had made the "switch" (and other switches) using a 3D printer, and that Gray had made some MCD components while he was at Garrett's apartment. Garrett's latter statements regarding the pistol and Gray's activities are consistent with other evidence obtained during the investigation.

8. On April 29, 2024, ATF SAs and other investigators executed a federal search warrant issued by this Court for the premises of Lakin Garrett's apartment located at 16440 Onalee Drive Apartment 10, Abingdon Virginia. Among other items, investigators recovered several plastic parts that appeared consistent with attempts to manufacture MCDs. These parts were also consistent with the suspected MCD that was added to the Glock pistol recovered from Gray during the April 21, 2024, traffic stop conducted by BVPD. Your affiant submitted the Glock pistol with the suspected MCD and the parts recovered from Garrett's apartment to ATF's Firearms and Ammunition Technology Division (FATD) for analysis. On or about August 10, 2024, FATD personnel published a report determining the modified Glock and the parts recovered from Garrett's apartment are classified as machineguns. On or about March 3, 2025, I sought and obtained an arrest warrant for Gray relating to his efforts to manufacture MCDs.

9. In addition, in May of 2024, ATF and the Abingdon, Virginia Police Department (APD) began a joint investigation into a shots-fired incident in Abingdon, Virginia. The investigation indicates that Lakin Garrett fired a pistol at a victim (hereinafter referred to as "Victim 1") as part of a drug-related dispute. The investigation uncovered information indicating Garrett used an intermediary to locate Victim 1 so she could confront Victim 1 and recover money she believed Victim 1 owed her. Garrett believed Victim 1 owed her money because Victim 1

5

sold her rock salt rather than the methamphetamine she ordered from Victim 1. This shots-fired incident took place on or about March 31, 2024, in Abingdon, Virginia, which is in the Western District of Virginia.

10. In August 2024, a federal grand jury in Abingdon heard testimony regarding the shots-fired investigation (including testimony from Victim 1) and the investigation into Gray's efforts to manufacture MCDs. In addition, this Court has issued several search warrants relating to Garrett and Gray.

11. Criminal history checks for Garrett and Gray revealed that both individuals have been previously convicted of felony offenses punishable by more than one year of incarceration.

12. On or about December 4, 2024, investigators became aware of an assault directed at Victim 1 at the Southwest Virginia Regional Jail Authority (SWVRJA) facility located in Abingdon, Virginia. Investigators located jail communications in which Victim 1 informed a relative that Victim 1 had been assaulted while in the jail in reference to previous communication with law enforcement officers and potential testimony against Garrett. Reporting from SWVRJA indicated Victim 1 was involved in a fight with McKinley SHAFFER on November 24, 2024.

13. Your affiant has determined that on November 25, 2024, SHAFFER participated in a recorded video visit using the jail communications system with an

individual with the initials S.B. (There is no indication at this time that S.B. is in any way connected to this investigation.) During the visit with S.B., SHAFFER stated he is a member of a gang. He also informed S.B. that Victim 1 robbed an "Aryan Princess" and "told on her" for shooting at Victim 1. As a result, SHAFFER stated that he "had to go beat him up" (in reference to Victim 1). Based on information gathered during the shooting investigation, your affiant concluded SHAFFER's description of the reason for the assault on Victim 1 matches very closely with the facts of the shooting documented by investigators. As an investigative note, GARRETT admitted to law enforcement during a previous interview that she was a member of an Aryan organization.

14.  On November 29, 2024, Victim 1 placed a recorded phone call over the jail communication system to a relative of Victim 1. During that call, Victim 1 stated that Victim 1 had been threatened that Victim 1 would be hurt if Victim 1 "tells on" the girl who shot at Victim 1. Victim 1 said the reason Victim 1 got in a fight was that people in the jail thought Victim 1 was going to "tell on the girl for shooting at me." Victim 1 further stated to the relative that Victim 1 was told that if Victim 1 were to testify "they're going to really hurt me."

15.  On December 5, 2024, Your Affiant and APD Investigator Heidi Shumate met with Victim 1 at the SWVRJA facility in Abingdon, Virginia. Victim 1 stated the assault took place two days after Victim 1 was arrested for unrelated

7

state probation violation charges. According to Victim 1, Victim 1 had seen the assailant in the cell block before but had never met him. Victim 1 further reported that Victim 1 had no warning prior to the assault, and the assailant never said anything. When asked how the fight started, Victim 1 stated Victim 1 was walking laps around the common area in the cell block when the assailant punched Victim 1 out of nowhere. Victim 1 described the assailant as a white male with brown hair tied back in a ponytail.

16.    Victim 1 reiterated there were no words exchanged during the incident, and Victim 1 did not see the assailant again after the incident. Victim 1 stated jail guards broke up the fight and Victim 1 spent three days in "the hole" as punishment for fighting. After three days in "the hole," Victim 1 returned to the original cell block. Victim 1 then stated "word around the pod [cell block]" was that if Victim 1 didn't say anything in court then everything would be fine. Victim 1 took this at the time as general advice as opposed to a specific warning. After investigators asked what Victim 1's impression of the conversation was, Victim 1 reported the distinct impression that the "Aryans" didn't want Victim 1 to talk to authorities regarding the night Garrett allegedly shot at Victim 1. Victim 1 also stated other inmates warned Victim 1 that if Victim 1 were to testify the next beating would be worse. Investigators then asked Victim 1 to identify the first person to relay this message

after Victim 1 returned to the original cell block. Victim 1 was hesitant to provide a name and would only describe the individual as a bald white male with tattoos.

17. During the interview, investigators observed that Victim 1 had what appeared to be the remnants of a black eye and some residual swelling over Victim 1's left eye. Victim 1 denied any serious injuries and refused medical attention after the fight. At the conclusion of the interview, Victim 1 identified a booking photo of SHAFFER as the individual who assaulted Victim 1.

18. Investigators obtained a copy of video surveillance footage of the assault captured by SWVRJA staff. The video shows an inmate punch Victim 1 without warning and an ensuing physical altercation. A short time later, jail guards broke up the fight and separated SHAFFER from Victim 1 and escorted both individuals out of the cell block. The individual shown in the footage who punched Victim 1 strongly resembles a booking photo of SHAFFER and is the same individual who related the story to S.B. via video visit as outlined above.

19. The investigation into the above-referenced shooting incident has been conducted by the ATF in conjunction with state and local partners. Your Affiant was investigating Garrett for the purpose of seeking one or more federal charges against Garrett. Victim 1, prior to the assault described above, offered statements to federal law enforcement officers and testimony in federal grand jury proceedings regarding Garrett. I understand that Garrett is now in the process of negotiating a

9

plea agreement to resolve state charges arising from the shots-fired incident. I do not currently anticipate pursuing additional charges against Garrett.

20. Based on my training and experience and the facts set forth above, I believe any use of physical force or threat of physical force, including the assault described above, directed toward Victim 1 was intended to interfere with Victim 1's participation in an official proceeding, in violation of 18 U.S.C. § 1512(a)(2)(A).

## CONCLUSION

21. Based on the above information and my training and experience in criminal investigations, I submit that probable cause exists to conclude McKinley Lee SHAFFER tampered with a witness/victim using physical force with intent to influence, delay or prevent testimony in violation of 18 U.S.C. § 1512(a)(2)(A).

Respectfully submitted,

*/s/*

Special Agent Peter Gonzalves
Bureau of Alcohol, Tobacco, Firearms and Explosives
United States Department of Justice

Subscribed and sworn to me on telephonically March 5, 2025

Honorable Pamela Meade Sargent
**UNITED STATES MAGISTRATE JUDGE**

Reviewed by: Whit Pierce, AUSA

11